**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**STEPHEN ELLIOT POWERS**                                      **PETITIONER**

**VS.**                                          **CIVIL ACTION NO.: 2:07CV20HTW**

**COMMISSIONER CHRISTOPHER B. EPPS,**
**MISSISSIPPI DEPARTMENT OF CORRECTIONS,**
**SUPERINTENDENT LAWRENCE KELLY and**
**MISSISSIPPI STATE PENITENTIARY**                              **RESPONDENTS**

## OPINION AND ORDER

This matter came before the Court on the Petitioner's Motion for Leave to Proceed *ex parte*, *in camera*, and on a Sealed Record with Regard to Applications for Funding for Expert Assistance Pursuant to 18 U.S.C. § 3599 and his Motion for Funding for Expert Assistance Pursuant to 18 U.S.C. § 3599.[1] Since the filing of these Motions, Petitioner, Stephen Powers, has withdrawn his request to proceed *ex parte* and has served the substantive Motion for expert funding on the Respondents, who have answered. That being the case, the first Motion, for leave to proceed *ex parte*, will be denied as moot. For the reasons that follow, the second Motion will also be denied at this time. Finally, Powers seeks an enlargement of time within which to file his Memorandum in support of his Petition for Writ of Habeas Corpus, and that motion will be granted.

The motion for funding seeks leave to employ two expert witnesses: Dr. James Lauridson, a forensic pathologist, and Dr. Marc Zimmerman, a forensic psychologist. In order to fully explain its ruling on these requests, it is necessary for the Court to briefly recount the facts and procedural history of this case. As the state court record has yet to be filed in this action, the facts known to the

---

[1] Also before the Court are two motions for extensions of time, which will be addressed in the Court's ruling.

Court have been taken from the opinions of the Mississippi Supreme Court that were issued on Powers's direct appeal and his petition for post-conviction relief.

Powers was convicted in the Circuit Court of Forrest County of the capital murder of Elizabeth Lafferty, allegedly committed while in the commission of, or attempt to commit, rape, and he was sentenced to death. On the evening of the crime, Lafferty and Powers were introduced at her home by a mutual friend. Later, Lafferty's friend and Powers's nephew left, leaving Lafferty and Powers alone. At about 1:00 a.m. the next morning, Lafferty's body was found in the hallway of her home. She had been shot three times at point blank range in the back of her head, once under the chin, and once under the temple. Photographs shown at trial depicted the position of her body when she was discovered, revealing that she was nude from the waist down, that her shorts were wadded up around one ankle, and that her feet were propped in the doorways of two rooms that were on opposite sides of the hallway, separating her legs by more than a ninety degree angle. In a written statement, Powers admitted to shooting Lafferty, although he stated that it was an accident. He also admitted to leaving Lafferty's body in the position in which it was found.

The photographs of Powers's body were the primary evidence of the State's contention that Lafferty was killed during a rape, or attempted rape. The contention was hotly contested by Powers's counsel at trial and on appeal, where Powers contended that he was entitled to a circumstantial evidence instruction on the rape charge. This contention was addressed at length by the Mississippi Supreme Court in its first opinion on this matter. *Powers v. State*, 883 So. 2d 20, 25-27 (Miss. 2003). That court found that the sexually explicit position of Lafferty's body when found, combined with Powers's admission that he killed Lafferty and left her body in that position, took his case "outside the realm of circumstantial evidence." *Id.* at 27. This issue was raised again, albeit more

2

indirectly, in Powers's claim that trial counsel was ineffective by not presenting a coherent defense to the rape charge. (Powers had different counsel on appeal.) In particular, he contended that counsel should have put him on the stand to explain the statement that he made to the police and that counsel should not have called the county coroner to testify. That claim was also rejected. *Id*. at 31-33.

In his post-conviction proceeding, Powers once more raised his ineffectiveness claim, arguing that his attorney should have obtained an expert witness to counter Dr. Hayne's testimony. *Powers v. State*, 945 So. 2d 386, 392-94 (Miss. 2006). At that point, the Mississippi Supreme Court found the claim procedurally barred as not having been raised on direct appeal, and, alternatively, without merit. Powers also re-argued his position regarding the sufficiency of the evidence of attempted rape. *Id*. at 398. Again, the court found the issue barred and, alternatively, meritless.

Powers asks permission from this Court to employ Dr. Lauridson to rebut Dr. Hayne's testimony that the positioning of Lafferty's body was evidence of an attempted rape. Dr. Lauridson has reviewed evidence from the case, including the autopsy report, serological analyses, DNA analysis, crime scene photographs, Dr. Hayne's testimony, and Powers's statement. He has submitted an affidavit in support of Powers's Motion, in which he states that there is no scientific evidence to support a sexual assault, that it does not appear from the photographs that Lafferty's body was dragged after death, and that he needs to review autopsy photographs and histology slides to complete his evaluation. The State opposes Powers's request, arguing that this claim is procedurally barred.

With regard to the request for funds, 18 U.S.C. § 3599(f) permits the Court to order payment of fees for investigative services that are "reasonably necessary." Prior to the adoption of this statute

in 2006, requests for investigative funds were governed by 21 U.S.C. §848(q)(4)(B), which contained identical language. The Fifth Circuit, in considering requests made pursuant to §848(q), has held that services are not reasonably necessary unless the petitioner shows a substantial need for the requested assistance. *Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir. 2004). In evaluating the need for investigation, courts must be mindful of the presumption of correctness given to state court findings and the stringent standard that must be met before new evidence may be offered in a habeas proceeding. 28 U.S.C. § 2254(e)(1) and (2). Where a petitioner seeks funds for an investigation that could not yield sufficient evidence to overcome the presumption of correctness, the investigative services are not reasonably necessary. *Clark v. Johnson*, 202 F.3d 760, 768-69 (5th Cir. 2000). Likewise, a petitioner cannot show a substantial need for investigative services to support claims that are procedurally barred. *Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997).

At this juncture, the Court has not seen the state court record, and, therefore, does not know exactly what evidence or argument was presented to the state trial or appellate courts. In the absence of such information, the Court cannot formulate an opinion on whether Dr. Lauridson's testimony should be excluded. Respondents argue that Dr. Lauridson's testimony is barred, as it would support an issue that was rejected by the Mississippi Supreme Court because it was not raised on direct appeal. Powers argues that the procedural bar has been waived, as the state court alternatively reached the merits of this claim. The law is clear, however, that a state court may make an alternative merits ruling on an issue without waiving its holding that the issue is barred. *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005). If Dr. Lauridson's testimony is intended to buttress only the argument that Powers's trial counsel should have obtained an expert to rebut Dr. Hayne's testimony, then that issue was barred from post-conviction review and cannot be revisited by this

4

Court. If there is some other, permissible use of Dr. Lauridson, that use is not clear from Powers's Motion. Additionally, the Court cannot determine whether Dr. Lauridson's opinions would be reasonably necessary in a substantive sense, even if he were allowed, at this juncture, to seek evidence to counter the Dr. Hayne's testimony. Before seeing that testimony, as well as the evidence presented by the defense at trial, the Court cannot make a decision on this issue.

For these reasons, the Court is of the opinion that the request for funds to employ Dr. Lauridson is premature and should be denied. This denial is not, necessarily, the Court's final word on the matter. After briefing has been completed, and after the state court record has been received and reviewed, the Court may determine that the new evidence that counsel hopes to produce would be helpful, particularly if it believes that an evidentiary hearing is in order. Therefore, the denial is without prejudice, and Powers may re-urge his request for further investigation at a later date.

Powers also seeks the services of a forensic psychologist to determine whether he has become incompetent to be executed, within the meaning of *Panetti v. Quarterman*, 127 S. Ct. 2842 (2007) and *Ford v. Wainwright,* 477 U.S. 399 (1986). In support of this request, he has submitted affidavits from two family members describing memory and speech problems resulting from two strokes that Powers suffered in 2006. Both Powers's mother and sister believe that these problems would make it difficult for Powers to understand the legal process, communicate with his attorneys, or comprehend the reasons for his execution. Additionally, Dr. Zimmerman, the forensic psychologist whom Powers seeks to employ, has also submitted an affidavit. That affidavit confirms that Powers's medical records show that he has suffered a stroke and states that the symptoms reported by Powers's family members are consistent with such an event.

It is questionable whether these affidavits raise a substantial question as to whether the memory loss caused by Powers's strokes "prevents him from comprehending the reasons for the [death] penalty or its implications." *Ford*, 477 U.S. at 418. Even if they did, however, such a claim is premature. Until the Supreme Court decided *Panetti*, habeas petitioners commonly raised their *Ford* claims in their first habeas petition, under the belief that raising the claim later would result in dismissal of the successive petition. *Billiot v. Epps*, 107 F. App'x. 385, 387 (5th Cir. 2004). In such a case, the claim was commonly dismissed without prejudice. *Id*. *Panetti* declared this practice unnecessary, holding that a competency claim could be raised in a later petition, when an execution date was imminent. 127 S. Ct. at 2855. In so holding, the Court emphasized that a competency claim is not ripe in the early stages of federal habeas. *Id*. at 2852 ("*Ford*-based incompetency claims, as a general matter, are not ripe until after the time has run to file a first federal habeas petition."); *see also Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998) ("[R]espondent's *Ford* claim was dismissed as premature, not because he had not exhausted state remedies, but because his execution was not imminent and therefore his competency to be executed could not be determined at that time."). Because Powers's *Ford* claim is likewise premature, the Court is of the opinion that his request for funds to employ a forensic psychologist should also be denied.

IT IS, THEREFORE, ORDERED as follows:

1. Petitioner's Motion for Leave to Proceed *ex parte*, *in camera*, and on a Sealed Record with Regard to Applications for Funding for Expert Assistance pursuant to 18 U.S.C. § 3599 [20] is hereby **denied** as moot, Petitioner having withdrawn his request for this relief. This denial is without prejudice to Petitioner's right to seek such relief with regard to future motions for funding;

6

2. Petitioner's Motion for Funding for Expert Assistance pursuant to 18 U.S.C. § 3599 is hereby **denied** at this time, but without prejudice to the Petitioner's right to re-urge this relief after the completion of briefing and the submission of the state court record;

3. Petitioner's First and Second Requests for Enlargement of Time to File Memorandum in Support of the Petition for Writ of Habeas Corpus [26] and [29] are hereby **denied** as moot, as the time requested has elapsed; and

4. Petitioner's Request for Stay of Proceedings, or, in the Alternative, Enlargement of Time to File Memorandum in Support of Time to File Memorandum in Support of the Petition for Writ of Habeas Corpus [30] is hereby **denied** to the extent that it seeks a stay of proceedings, but **granted** to the extent it seeks and enlargement of time. Petitioner shall have until May 18, 2009, within which to submit his Memorandum.

IT IS SO ORDERED, this the 31st day of March, 2009.

                                                s/Henry T. Wingate
                                  CHIEF UNITED STATES DISTRICT JUDGE